Case 13-1152, USA v. Jimmy Valentine. Oral argument not to exceed 15 minutes per side, and Mr. Ray for the appellate. Good morning. Good morning, Your Honors. May it please the Court, my name is Richard Ray and I'm here to represent Jimmy Valentine in this appeal. With the Court's permission, I'd like to reserve three minutes of rebuttal. That's fine. Your Honors, there are two legal bases for reversing the decision of the District Court below. The first one is that the District Court failed to apply the legally mandated degree of caution required by this Court's precedence when reviewing the cold record in this case. And the second is that the District Court held Mr. Valentine responsible for the actions of his co-conspirators at the sentencing phase without making either of the two legally required particularized findings that are also required by this Court's precedence. Now, with those two points in mind, Your Honor, I'd like to begin by pointing out that the conspiracy here was a loosely knit organization involving a number of individuals, and that the first sentencing judge who apprised the record in this case specifically noted that my client, Mr. Valentine, was not the leader of the overall conspiracy. Indeed, the District Court noted Judge Enslin in the first sentencing proceeding pointed out at ID number 1610-1611 that my client was not more or less responsible for the drug transactions at issue in the conspiracy than any other member of the conspiracy. Indeed, the District Court, Judge Enslin, specifically rejected the government's contrary claims when the government requested a four-point leadership enhancement in this case. Instead, Judge Enslin rejected that conclusion and imposed only a two-point management enhancement while specifically resting that enhancement on a relatively narrow finding based on a testimony of Witness Butler that my client transacted a handful of transactions with him regarding the conspiracy's Arkansas distribution chain. And it was only based on that narrow finding, rejecting all of the government's arguments based on other witnesses, indeed rejecting the government's arguments based on other statements by that very witness, that the District Court concluded that a two-point management enhancement was appropriate. And finally, the District Court indicated that he rejected the government's view of my client's role in this conspiracy by rejecting the government's outlandish forfeiture request of $750,000. Instead, the District Court imposed only about a $10,000 forfeiture order. And so in all these ways, Judge Enslin, who heard the live testimony in this case, evinced his belief that the government's view of my client's role in the conspiracy was actually much more narrow than the government continues to claim, even in briefing here, and instead that he could only be shown by a preponderance to have played a role in the handful of transactions involving Witness Butler. Instead of heeding those expressed statements on the record and expressed findings by Judge Enslin, the District Court below concluded that because my client was convicted of the conspiracy, he was necessarily attributable for all the drug transactions allegedly engaged in by the conspiracy. If it was foreseeable, he would be, right? Your Honor, even if it were foreseeable, that actually wouldn't be enough, because there are two particularized findings required by Campbell and all of his successor cases. The other particularized finding goes to the scope of my client's consent. And indeed, Campbell and Orlando and other cases are express in stating that even if an individual knows the entire scope of the conspiracy, which is not true here, but even if the individual knows the entire scope of the conspiracy, it nonetheless is not sufficient on that basis to hold the individual responsible at the sentencing phase for all of the drugs transacted in that conspiracy. And you can also see that point made in the application note 2 to the relevant sentencing guideline provision, 1B1.3. And that's a consistent theme in this Court's cases, Your Honor, expressly stating the foreseeability alone is not enough. And indeed, there was no foreseeability finding at issue here either. The Court below simply noted that my client had been convicted of the conduct alleged in the conspiracy. It's in fact probably not the case if you look at the record that my client was aware of a great deal of what was going on in the conspiracy. According to the government's own theory of this case, Phillips testified to a separate drug distribution network involving California that did not specify my client's involvement at all at any point in that alleged activity. So it simply is not the case that there's either particularized finding here, and even one would not be sufficient. So at an absolute minimum, my client deserves a remand so that Judge Yonker can properly appraise the record here and determine whether or not, despite the contrary conclusions of Judge Enslin, there is some room to make particularized findings regarding my client's role in this conspiracy. But in the absence of those findings, the District Court made a clear legal error that justifies at a minimum reversal and remand. But indeed, we think that even that would be an inadequate remedy here, because the District Court also failed, as I mentioned at the beginning, to apply the appropriate degree of caution when reviewing key witness testimony. And the single best example of that is the testimony from witness Butler. If you take Butler's statement to be credible, does that meet the 8.4 kilos? No, Your Honor. It does not? It does not, because Butler gave a range of transactions. And to err on the side of caution is not to assume the high end of the range. If I were to say that I promise you investment return of 1 to 5 percent, it wouldn't be cautious to assume an investment return of 5 percent. Here, Butler said that there were a number of transactions, a minimum of three, and that the first one involved only ounces of illegal narcotics, and that the quantity of the others was between one and two. So even if you credit everything he said, and we indicate that Butler was unsure, he expressly said he wasn't sure about many things, he was a co-conspirator who's unreliable, but even if you just take what he says at face value, the bottom end of his range is just about 2.25 kilograms. And I don't want to say that that's a trivial amount of narcotics by any means. It would make sense of Judge Enslin's conclusion that a two-point enhancement would be appropriate for allegedly managing those transactions. But if you focus at the bottom of the range or even at the middle of the range that Butler testified to, and if you fully credit it, you're still far short of the 8.4 kilograms that were found below. The 2.5 is the amount that Butler says he sold to Mr. Valentine. Yes, that's near the bottom of his range. Bottom of the range. But he testified that he sold somewhere around 50 kilograms to Mr. Valentine and other members of the conspiracy. He did say, when prodded by the government, that he could have transacted as much as 50 kilograms, and Judge Enslin specifically said on the record that he did not credit that. He was not convinced that it was 50 kilograms or not because Butler's statements were not supported by sufficient factual basis. Did Judge Enslin say something to the effect that he was crediting some amount in that kind of range, 30, 40, 50 kilograms, or, for example, he just said he didn't credit the 50 at all? He certainly did not say he credited 30 or 40 or anything like that. What he said is, some witnesses say 40 to 60, and he expressed misgivings about that. He specifically said the estimates might be inflated. So he expressed, on the record, even though those estimates were way beyond the 1.5 at issue, he went out of his way to express misgivings and concerns about their reliability. And I think that we know that he didn't agree that even a 30 amount, which wasn't specifically discussed at the final sentencing hearing, because he rejected the $750,000 forfeiture request. And how could he have done that if he believed that there were even 30 kilograms attributable to my client? So I think what happened here, Your Honor, is that because there are these lofty estimates and the government keeps saying, contrary to Judge Enslin's expressed statements on the record, that my client was at the center of all this, I think Judge Yonker overlearned the lesson of this court's prior decision in this case and just went down some of the allegations and said, well, they're all in a bundle and Mr. Valentine is convicted of this conspiracy and so it's all attributable to him. And that's simply inaccurate. It's a simple legal error, Your Honor. There's never been a finding by any judge that the 50-kilogram amount is properly attributable to my client. And moreover, the only judge, unfortunately, who is available to review this record was not able to see the live witnesses who gave extremely problematic testimony, as Judge Enslin noted. That's why he thought the estimates were so inflated. Well, to make those estimates, the judge doesn't have to see live witnesses, does he? Or she, if it's a woman. But anyway, Judge Yonker is a man. But you can look at the record and see affidavits or statements in the record or anything else, right? Your Honor, that is possible, and in some cases I think that might be enough. But here it is. Sentencing. Pardon me? In sentencing, you're not bound by rules of hearsay or anything like that, right? I think that's generally true, Your Honor. Our point here is that in light of the fact that this is a cold record with suspect co-conspirators testifying for plea bargains and the only fact finder who ever saw them live expressly went out of his way to say that they were problematic in giving their testimony, that only demonstrates that the normal cautious standard of review here has extra implications. I mean, if you're going to apply caution to someone who says, I think I can probably get you a return on investment of 1 to 5 percent, then it might not even be cautious to assume a 1 percent return if the person is equivocating a little bit. And I think that here part of the problem is that when you look at the cold record and the government cites these upper-end bounds, it can become easy, I think, to apply a rote mechanical analysis and just add them up, whereas a judge who did in fact see them live was much more cautious than that, much more concerned, and went out of his way to express skepticism while finding only a 1.5 kilogram amount. But that's all he needed to do at that time based on the sentencing rules, right? Yes, and we accept this Court's prior decision that it is appropriate at this stage for Judge Yonker to apply a cautious standard of analysis, which this Court specifically said the last time this case was here, to apply a cautious standard of analysis and do his best, in light of that standard, in reviewing the record. And our argument is that Judge Yonker failed to do that, and moreover, he exhibited a clear legal error by, again, equating the scope of the conspiracy with the scope of drug attribution at the sentencing phase. It is black-letter law that is not enough to have been convicted of the entire conspiracy to have the entire conspiracy's transactions attributed to an individual. That was said in Campbell, that was said in Orlando, it's been said in numerous other cases. And at a minimum, therefore, Judge Yonker should look at this record again in our view. Were you counsel at the time Judge Yonker made this decision? I personally was not counsel, Your Honor, but— Did counsel ask Judge Yonker to make these particularized findings that you're talking about under Campbell? Well, Your Honor, we certainly didn't ask for the particularized findings to be made because we don't believe that they could properly be made on this record. Why not? Well— If you're saying now it's error not to make them, now you're saying you can't make them. Your Honor, our— I don't understand your position. Our position, and I think, frankly, the government's position, including in this appeal and below, is that if you look at the specific testimony of witnesses engaging in transactions with my client, you can build off to the requisite amount. And it was on that basis that we argued the case. We said that my client was not the leader of the conspiracy and that the overall qualities could not be attributed to him. And in the face of that, the district court simply said, well, because he was part of the conspiracy, that's enough. And the government has never, by the way, argued forfeiture on this point, Your Honor, even if somehow that there could be a forfeiture problem here. We raised this point on appeal, and the government saw fit to claim that the findings from Judge Enslin cross-applied here. And that is also just clearly wrong. Judge Enslin only made findings as to the 1.5 quantity and took care to say that the two particularized findings were made. And that narrow particularized finding with regard to Butler, with regard to the handful of transactions with Butler, simply can't be enough to pass muster at this stage when the thresholds are so much higher, much, much higher, Your Honor. Well, I'm not saying it's a forfeiture, but I'm just saying that it's kind of unfair to the district judge if you're raising something now that nobody raised below. Your Honor, with respect, it is not unfair at all. We argued below that the government had failed to meet its burden, its burden, to substantiate the higher finding. We made all of the material arguments we're making now that the witnesses were unreliable, that their ranges should be, you should be cautious in assessing their ranges, and that my client was not at the center of the conspiracy. And then we got a decision that seemed to overlook those points and make this generalized attribution finding. And at that point, the government, I think, had overreached, and it was appropriate for us to point out that the district court made a legal error. It's not, I think, our responsibility to ask the court to make findings that would be contrary if they were made to my client. That's the reason you go to the district court so you don't have to come up here. The district court makes the findings, and it satisfies you. And then you come up here and complain because it didn't. That's just what I'm saying. Your Honor, again, I don't think that's a fair view. If the district court, we cited the relevant guideline provision. For example, we cited a number of these cases, and the guidelines provision and the cases require the particularized findings. And the government, moreover, argued the case on the same terms that we did. And so in the face of that, the district court made, again, this generalized statement about the conspiracy. And I don't think it's fair at this point to say that, well, because we didn't anticipate that the district court could have come up with this error, that somehow that mistake falls on my client. Your Honor, I see that my time has expired. If there are no further questions, I'll wait for rebuttal. Okay. Thank you. Good morning. Good morning. May it please the Court, Jennifer McManus on behalf of the United States. The district court did not commit clear error in finding Mr. Valentine responsible for at least 8.4 kilograms of crack cocaine. The court applied the appropriate level of caution. It reviewed the entire file, including trial transcripts. It issued a six-page written opinion and a 3582C2 motion, which is long for that type of motion. There's a whole page full of transcript sites to the record to support the judge's findings. The judge did not find Mr. Valentine responsible for 50 kilograms of crack cocaine. He didn't find him responsible for 40 or 30 or 20. He found him responsible for at least 8.4 kilograms. That is a cautious estimate on this record, and this court should affirm it. I'd like to just point out that Judge Yonker was not writing on a blank slate here. So if you look at this court's opinion remanding this case, the court said this is a case where uncontradicted trial testimony indicated that the conspiracy involved tens of kilograms of crack cocaine that were foreseeable to each defendant as a member of the conspiracy. And giving an opinion on Judge Maloney's findings in the consolidated prior appeal, his determination was consistent with Judge Enslin's original findings. Judge Yonker's findings here are likewise consistent with Judge Enslin's original findings. Judge Enslin did not make adverse credibility findings against the two major witnesses in this case. In fact, Judge Enslin expressly credited Jerry Butler's testimony. He said, I credit what Jerry Butler said. He made no findings whatsoever as to the other major witness, Yusef Phillips' credibility. I think if you read the briefs, you may come away with the feeling that Judge Enslin made an adverse credibility finding because, for example, their briefs say Judge Enslin wholly declined to credit Yusef Phillips' estimate as to the drug quantities. What Judge Enslin did, Judge Enslin certainly expressed some misgivings about the high-end quantities. This was a conspiracy that took place over a number of years. Drug dealers are notoriously not very good about keeping track of exactly the quantities in which they're dealing. And so he had some misgivings about whether the total quantities, 50 to 75, for example, was accurate. So as this court said in its prior opinion, remanding to Judge Yonker, although Judge Enslin questioned whether Butler and Phillips inflated the total quantity of drugs involved, it is clear from the transcript that his concerns were focused on how many tens, italicized in this court's opinion, tens of kilograms were involved in this case. This is just not simply a case where there's a few ounces here and a few ounces there that we have to tally up and try to figure out what's the most conservative, smallest quantity transacted between two individuals that we could properly assign to the defendant. This is a large-scale conspiracy that operated interstate over a number of years, and there were tens of kilograms involved. And Jimmy Ray Valentine was not a member of the conspiracy on the periphery. He was the one making the calls. He was the one making the calls to the supplier in Arkansas, sending his nephew Cory Valentine down there to retrieve the drugs on behalf of the organization. And so these are the findings that Judge Yonker made. If you look at page 5 of his opinion and all of those record sites, I'd like to just point out three of them, and then I'll conclude unless there are questions. What's the most damaging evidence against Valentine to get to 8.4 kilos or greater? The most damaging, easiest-to-see evidence is Butler's testimony that Cory Valentine made approximately 20 trips down to Marianna, Arkansas, to retrieve between one and a half and three kilograms of crack cocaine per trip. Each time. Each time. So that's 20 right there, and that's 20 trips at one and a half on the bottom end. So I think it's those figures, and that's all cited in the district court's opinion, and it's consistent also with what Yusef Phillips testified. The other major witness was Yusef Phillips, and he testified that Cory made the district court pointed out in Paragraph 62 of the pre-sentence report. It says that Cory made seven trips down to Marianna, Arkansas, between January and July of 1997. So in those seven-month period, he was making a once-a-month trip. So that's seven trips right there, and if you look at the actual trial testimony of Yusef Phillips, what he said at trial on page ID number 2068-69 is that Cory Valentine went to Arkansas one to two times a month between January of 1997 to September of 1998. So that's, if you add those up, that's about, gets you close to around that 20-trip figure, and so that testimony is consistent, and that's what Judge Yonker said in his opinion, is that I wish I had the advantage of seeing the witnesses live and making these findings anew, but I don't, and I have to make these findings based on the existing record as the Court of Appeals has instructed me to do, the existing record as of the time of the original sentencing. So he went back, and he looked at all the trial testimony. He read the pre-sentence report. He went through all of the evidence, and he made these findings and determined that because there was detail in the testimony, because the testimony was consistent, that it was reasonably reliable. There's just no basis at all in this record to find that Mr. Valentine was responsible for, let's say, less than 10 kilograms of crack cocaine. I mean, clearly the district court did not commit clear error in holding him responsible for at least 8.4 kilograms. Well, did the court fail to make particularized findings here? That's what's been raised by this counsel. The court made adequate findings. Again, the court was not writing on a blank slate here, and I do think that the court absolutely is entitled to draw on what Judge Enslin found at the original sentencing and what the Court of Appeals has already found. So taking it into context and looking at page 6 of the court's opinion where the district court actually cites the relevant guideline number, and says, yes, this defendant is responsible for more than just those amounts that he personally and directly transacted with the supplier. He's responsible for all jointly undertaking criminal activity. And the court described that jointly undertaking criminal activity in terms that was consistent with what Judge Enslin found, that this was an extensive crack cocaine distribution conspiracy. And this defendant was not only a convicted member of the conspiracy, but he was a member deserving of a two-point aggravating role enhancement. Now, it's true that Judge Enslin didn't give him the full four points, but he gave him a two-point aggravating role enhancement because Jimmy Ray Valentine was not on the periphery here. He was pooling his money. The testimony indicates that Corey Valentine took down on average $50,000 to $66,000 per trip. That was money pooled by Jimmy Ray Valentine and the other members of the conspiracy, and Corey went down to get the drugs at Jimmy Ray Valentine's direction. So given that, the findings that the judge made absolutely were sufficient here to make that particularized finding. This is not an original sentencing. This is a 3582 C2 opinion, and he does have to find quantity, and he has to find that it falls within the scope of what's properly attributed to Mr. Valentine in terms of jointly undertaking criminal activity. But the findings that he made on the sixth page of his opinion were more than adequate to support holding Mr. Valentine responsible for at least 8.4 kilograms. And I can assure you that if Mr. Valentine wanted more findings, he could have moved for reconsideration, and Judge Yonker would have issued another opinion because Judge Yonker is very thorough and very responsive, but they didn't do that here. And I, for one, have no doubt that if this were to go back down for Judge Yonker to make further particularized findings, he would reach the same result for the same reasons that he already set forth in his opinion, and there's no reason to do that in this case. Unless the Court has any questions, I'll just urge the Court to affirm. I just observe it's taken a long time for this guy to get his final sentences. Fourth time. Well over 10 years. Thank you. Okay, thank you, Ms. McManus. Appreciate it. Mr. Reed. Your Honors, I'd like to make two very important points at this stage. When the Court asked the government what their best piece of evidence was, they pointed to the same thing that they said in their brief, the 20 trips by Corey, by a different defendant. The government's brief on its self-paginated page 46, ID page 52, says, Corey Valentine made 20 trips down to Arkansas, receiving 1.5 to 3 kilograms at a time. Corey did not make the arrangements. Jimmy Ray or Kenneth did. The government's own brief, citing the record testimony they think is the best for them, can't even connect how many, if any, of the trips were at my client's direction. This is exactly why you need to have the particularized findings to figure out who played what role in the conspiracy. Hypothetically, if my client played a role in the conspiracy beyond the handful of transactions with Butler, such that he organized two or even three or even four of these trips, that would still be short of the 8.4-kilogram finding made below. The government's attitude towards the record as it just evinced and as it has had throughout the entire proceedings, is that because it's not an ounce here, an ounce there, my client gets a huge number. That simply is not consistent with this court's case law. It's simply inconsistent with caution, and it demonstrates the need for the particularized findings that the government appears to have acknowledged in its last speech were not actually made here by the district court below. Okay, so that's the first big point I want to make. The second big point has to do with the issue of Judge Yonker's disposition below. In every single one of the particularized findings cases, the district court was on notice under the law that it had to make the particularized findings, and it was reversed and remanded on that basis. So every case applying Campbell is a case like this one, where the district court was on notice under law and simply failed to apply, a remand was still appropriate. Confirming that, Judge Enslin made the particularized findings here for 1.5, yet Judge Yonker did not. Confirming it even more, Judge Maloney, in the parallel proceedings involving the other defendants, made the particularized findings, yet Judge Yonker did not. And the reason is that Judge Yonker had the same attitude that the government does at Vince. Because my client was alleged to be a leader, even though Judge Enslin repeatedly and emphatically rejected that, that he was the leader of the entire conspiracy, nonetheless everything can be attributed to him. So, Your Honors, I'd also like to point out that the government mentioned this idea of reconsideration and expressed its confidence that the judge below would arrive at the same conclusion if given another chance. Well, with respect, Your Honor, this issue is properly here on appeal. There's no argument of forfeiture. There is no obligation for a motion for reconsideration. The district court made a legal error that the government has not been able to remedy here. And if the government thinks that it would prevail on reconsideration, then I think this court should give it the chance to find out by remanding the case for Judge Yonker to review the record under the appropriate legal standards. Are there no further questions? Okay. Thank you. Thank you, Mr. Rhee and Ms. McManus, for your arguments today. We certainly appreciate them and hopefully benefit from them. The case will be submitted. I think that completes our argument calendar, so you may adjourn.